# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAFAEL GIL**<br>14122 Notley Road<br>Silver Spring, Maryland 20904<br><br>**Plaintiff,**<br><br>v.<br><br>**NEIGHBORS' CONSEJO**<br>6323 Georgia Avenue, NW #206<br>Washington, D.C. 20011<br><br>**NANCY A. MORAN-GAITAN**<br>6452 Lake Meadow Dr. Apt. 1<br>Burke, Virginia 22015<br><br>**DC DEPT. OF BEHAVORIAL HEALTH**<br>64 New York Avenue, NE, 3rd Floor<br>Washington, D.C. 20002<br><br>**SILVANNA DONET**<br>[Exact address unknown]<br>Burke, Virginia 20002<br><br>**GLENDA RODRIGUEZ**<br>9925 Ridgeline Dr.<br>Montgomery Village, MD 20886<br><br>**Defendants.** | Case: 1:19-cv-02197 JURY DEMAND<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 7/24/2019<br>Description: Pro Se Gen. Civ. (F-DECK)<br><br>**PLAINTIFF DEMANDS A**<br>**TRIAL BY JURY** |

## (COMPLAINT)

Comes Now, Plaintiff, Rafael Gil (hereinafter "Plaintiff"), Pro Se, and files his Complaint against the above-named Defendants on the following grounds:

**RECEIVED**
JUL 24 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## INTRODUCTION

1. The Plaintiff brings this action for the enumerated causes of action. All the named Defendant's owed a duty to the plaintiff; breached, deviated and/or failed to exercise reasonable care personally or established in relevant profession; and did cause the plaintiff's damages. Specifically, the Plaintiff entered a well-known drug rehabilitation center in the District of Columbia for treatment for severe, acute, and life threatening Alcoholism. Instead of being treated for his addiction, the Plaintiff never received any treatment at all. Plaintiff was further forced to work and manage other patients at the rehab center. It was also implied that his treatment and his ability to stay at the center was contingent upon his agreeing to work. Plaintiff was also forced to live in extreme living conditions and forced to execute rules upon follow patients that put his life and well-being at risk. As a direct and proximate cause of all Defendant's negligence, Plaintiff suffers from Post-traumatic Stress Disorder (PTSD), alcohol abuse, in remission, Depression with anxiety, anger management issues, sleeping disorder, and other related issues.

## JURISDICTION

2. Jurisdiction in this action is predicated upon 28 U.S.C section 1332.

3. The plaintiff, Rafael Gil, is a citizen of the State of Maryland.

4. The Defendants are all citizens of Virginia or incorporated under the laws of Washington, D.C. and have principal places of business in Washington, D.C.

5. The amount in controversy exceeds $75,000.00.

## VENUE

6. Venue is proper in this judicial district as all or part of the alleged acts occurred in Washington, D.C. Venue is also proper pursuant to 28 U.S.C. section 1391.

## THE PARTIES

7. The Plaintiff is a 49 year old male who sought the help of Neighbors' Consejo for his severe and chronic alcohol abuse. And at all relevant time, the Plaintiff, was supposed to be treated for alcoholism by Neighbors' Consejo.

8. Defendant, Neighbors' Consejo (NC), is a Washington, D.C. based non-profit, with its principal place of business at 6323 Georgia Avenue, NW #206, Washington, D.C. 20011. Neighbors' Consejo principal purpose is to provide culturally and linguistically competent Mental Health Rehabilitative Services, social, and community support services to the neediest in Washington, D.C. – those underserved and even those uninsured.

9. Defendant, Nancy A. Moran-Gaitan (Gaitan), was Clinical Director, and a licensed Therapist, for Neighbors' Consejo at all relevant times.

10. Defendant, Silvanna Donet (Donet), the niece of Nancy A. Moran-Gaitan, was Intake Coordinator for Neighbors' Consejo at all relevant times.

11. Defendant, District of Columbia Department of Behavioral Health (DBH), is a Department of the District of Columbia Government, with its Department Headquarters located at, 64 New York Avenue, NE, 3rd Floor, Washington, D.C. 20002.

12. Defendant, Glenda Rodriguez, was a Director at Neighbor's Consejo at all relevant times

## STATEMENT OF FACTS

13. On September 2, 2014 went to Neighborhood Consejo for treatment for acute chronic alcoholism.

14. At the time of entry into Neighborhood Consejo, the Plaintiff was homeless-in a literal sense.

15. Plaintiff had spent, the prior, nearly 13 months consuming alcohol daily.

16. Plaintiff learned of the program by being a member of the community and walking by its (NC) location, which was then on, 16th St. NW, Washington, D.C.

17. On September 2, 2014, Plaintiff presented his Washington DC identification and was taken into Neighbors' Consejo to be treated for his alcoholism. He went through the immediate intake procedure and was taken next door to a facility that housed other patients for treatment.

18. Plaintiff observed that the house or facility, next door, appeared to be cold, had two patients (believed to be patients based on Plaintiff's perception), and had minimal electrical power and no heat. Extension cords were run from other rooms to provide electricity to other rooms. There was no hot water in the place whatsoever. Hence, Plaintiff was forced to take cold showers. As a result today he suffers severe PTSD and other damages detailed in the complaint.

19. Plaintiff was forced to sleep with jackets, hat, gloves, and blankets all known by Gaitan. As a result today he suffers severe PTSD.

20. After the first week, Plaintiff had alcohol withdrawal symptoms and was shaking and in need of medical treatment. Instead of medical treatment he was made to sleep without heat, and was first able to see a doctor only for a few minutes after 1 week. As a result today he suffers severe PTSD and other detailed emotional and physical damages detailed in this complaint.

21. Plaintiff, upon entry, was told by Gaitan, that the treatment program would be 90 days. This was also described in the agreement that Plaintiff signed with NC.

22. Plaintiff endured these deplorable, unconscionable acts, and conditions from September 2, 2014 to August 30, 2016. Three days shy of two full years.

23. On the few occasions that Plaintiff would see the physician, the physician would only see him for a very short time and once prescribed Plaintiff sleep medication.

24. After around 30 days Gaitan approached Plaintiff about beginning to working for the facility at the front desk.

25. Forty-five days into the program, Gaitan had Plaintiff being working for the facility NC. Plaintiff was charged with monitoring both housed and work nearly 24 hour days as other staff had left as the organization. In addition, his duties were to drug test other patients, apply rules of origination, terminate patients' status in the program and also terminate residents for nonpayment of rent. Gaitan shared with the Plaintiff that the organization was out of money.

26. Plaintiff was never permitted to finish his treatment program as he was forced to work in lieu of treatment. As a result today he suffers severe PTSD and other related emotional harm as described in this complaint.

27. He was forced to drive the organizations van to numerous locations despite the fact that he told Gaitan that he had "no driver's license." Plaintiff was forced to do this for nearly two years. If Plaintiff failed to cooperate, Gaitan made it clear by remarks and action that he would be forced to leave NC.

28. He was forced to drive other patients to doctors' appointments, court, museums, etc.

29. Gaitan charged Plaintiff and other patients rent despite that not being part of program. Rents were never returned to Plaintiff nor other patients. For example, on occasion, Gaitan would show up at the facility at 3A.M. and awaken all the resident (patients) and demand rent payments. If residents did not have rent payments, there residency and participation was terminated and/or they were relegated to going to the basement of the facility and were disallowed from using the common areas such as cooking etc.

30. As part of Plaintiff duties, he would be forced to terminate these residencies for failure to make rent payments and other reasons. Plaintiff, at this point, was not being treated for his chronic alcoholism any longer—although he should have been—he was not getting any sleep, he was feared for his life as he was being threatened by other residents when and if he need to terminate their tenancy or enforce other rules. This caused Plaintiff great stress, Depression, sleeplessness, anxiety, PTSD and other emotional and physical damages described throughout this complaint.

31. Gaitan would use rent monies to pay her personal expenses.

32. Gaitan also forced Plaintiff to do things where his personal safety was at risk, such as putting patients out of the program for nonpayment of rent, if rent was not paid, patients were either put out of program or forced into the basement (and sleep on the basement floor) and not permitted to use any of the common areas or cooking facilities.

33. Gaitan should not have forced Plaintiff to work for the program prior to being in program for one year …Plaintiff only received 45 days of treatment.

34. Plaintiff opened office at 9am, then monitor til 10 pm at night, and then 11p send other patients to bed and then forced to monitor the facility throughout the night.

Plaintiff had no internal checks whatsoever for treatment, or his continued sobriety, today he as a direct and proximate cause of Defendants failure to treat Plaintiff and his forced working and living conditions, Plaintiff suffers Post-traumatic Stress Disorder (PTSD), alcohol abuse, in remission, Depression with anxiety, anger management issues, sleeping disorder, and other related issues.

35. Plaintiff only treatment has been self-help….

**COUNT I**
**Negligent Infliction of Emotional Distress**

36. All of the foregoing allegations are incorporated at this point as though fully set forth in detail.

37. All Defendants were under a duty to exercise care that is standard and/or commensurate with ordinary care exercised by such professionals and para-professionals in this field.

38. All Defendants, named herein, knew, or should have known, that failure to exercise due care in the performance of fully providing professional rehabilitative services and treatment to the Plaintiff who suffered from acute chronic alcoholism, along with the severe and extreme indentured working conditions and living conditions that Plaintiff was exposed to, and forced to endure, would cause plaintiff severe emotional distress.

39. All Defendants, named herein, breached such required exercise of care adhered to by professional and paraprofessional, and a proper standard of care, by failing to such acts as, included to but not limited to, treating Plaintiff for his acute chronic alcoholism, forcing Plaintiff to work nearly 24 hour day cycles without pay, forcing Plaintiff to sleep in cold and extreme conditions without electricity and gas. This was known by all Defendants.

As a proximate result of defendant's acts described above by ALL Defendants, and the consequences proximately caused by it, as hereinabove alleged, Plaintiff suffers from severe emotional distress and the following related injuries: Post-traumatic Stress Disorder (PTSD), alcohol abuse, in remission, Depression with anxiety, anger management issues, and other related issues.

40. As a further direct and proximate result of the negligent acts of ALL Defendants, or its agents, employees or servants. Plaintiff, has incurred hedonic damages and has lost the enjoyment and quality of life, and, as he is informed and believed, will continue to suffer

hedonic damages and to lose enjoyment and quality of life in the future and on a permanent basis all to his damage in such a sum as may be proven at the trial of this cause.

## PRAYER FOR RELIEF

42. Wherefore, Plaintiff prays for a judgment as follows:

a. That the Court grant Plaintiff compensatory damages for Negligence, the humiliation, emotional distress, and other damages caused by Defendants' conduct;

b. That the Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

c. That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees.

d. That the Court grant Plaintiff a jury trial;

e. That the Court grant Plaintiff all other relief the Court deems just and proper; and, for

f. for all non-economic damages; and medical and all related expenses.

**JURY DEMAND**

42. Plaintiff hereby request a jury trial on all issues of fact, including the measure of damages.

Respectfully submitted,

Rafael Gil (Pro Se)
14122 Notley Road
Silver Spring, Maryland 20904
202-793-9459
RafaelGil33@yahoo.com